# LEE *v.* UNITED STATES

No. 76–5187.  Argued April 25, 1977—Decided June 13, 1977

24

Powell, J., delivered the opinion of the Court, in which Burger, C. J., and Brennan, Stewart, White, Blackmun, Rehnquist, and Stevens, JJ., joined. Brennan, J., *post*, p. 34, and Rehnquist, J., *post*, p. 36, filed concurring opinions. Marshall, J., filed a dissenting opinion, *post*, p. 37.

*Joseph P. Bauer,* by appointment of the Court, 430 U. S. 928, argued the cause for petitioner. With him on the briefs was *Conrad Kellenberg.* [Reporter's Note: Messrs. *Bauer* and *Kellenberg* represented petitioner before this Court only. Cf. *post,* at 34, 37, and 38.]

*Deputy Solicitor General Frey* argued the cause for the United States. With him on the brief were *Solicitor General McCree, Assistant Attorney General Civiletti,* and *Jerome M. Feit.*

Mr. Justice Powell delivered the opinion of the Court.

At the first trial in this case the District Court, having heard the evidence, granted petitioner's motion to dismiss the information for failure to provide adequate notice of the crime charged. Petitioner was retried and convicted. The question is whether the second trial violated the Double Jeopardy Clause.

## I

On December 21, 1973, petitioner Phillip Jerome Lee stole two billfolds from the blind operator of a newsstand and candy concession in the lobby of the United States Post Office in Fort Wayne, Ind. A security guard saw Lee take the

billfolds and apprehended him as he tried to escape. In an information filed on February 6, 1974, in the United States District Court for the Northern District of Indiana, the Government charged Lee with the crime of theft, in violation of the Assimilative Crimes Act, 18 U. S. C. § 13, and the applicable Indiana statute, Ind. Code Ann. § 10–3030 (1971).[1] Although the defect did not come to light before trial, the allegations of the information were incomplete. The Indiana statute requires proof that the theft be committed knowingly and with intent to deprive the victim of his property. The information made no mention of knowledge or intent and charged only that Lee "did take and steal" the billfolds in violation of the statute. App. 4.

Some two months before trial, Lee's lawyer withdrew and another was appointed to represent him. Lee waived his right to a jury trial and on July 16, 1974, a bench trial began as scheduled. After the prosecutor's opening statement, Lee's new lawyer moved to dismiss the information. The court remarked that the timing of the motion would make full consideration difficult:

> "Well, I will consider it, but you certainly were in the case before this morning. It is difficult to deal with a motion to dismiss if you raise any technical questions, and you don't give me the opportunity in advance of trial to research them. So I will hear you, but you have that problem." *Id.*, at 8.

Counsel then called the court's attention to the lack of any allegation of knowledge or intent in the information. Referring the court to the Indiana case of *Miller* v. *State*, 250 Ind. 338, 236 N. E. 2d 173 (1968), he argued that if an information failed to charge the specific intent required by § 10–

---

[1] The statute provides in pertinent part that a person commits theft when he "knowingly . . . obtains or exerts unauthorized control over property of the owner . . . and . . . intends to deprive the owner of the use or benefit of the property . . . ." This provision has been repealed effective July 1, 1977.

3030, "then the Information must be dismissed." App. 9. The court tentatively denied the motion:

> "Well, since I have had no opportunity to study this at all, I will deny the motion at this time, but at my first opportunity I will check your citation and give consideration as appears to be warranted.
>
> "Is there anything further by way of opening statement?" *Ibid.*

Defense counsel proceeded to outline Lee's defense. He offered no objection to going forward with the trial subject to the court's further study of his motion to dismiss.

The trial lasted less than two hours. After the Government had presented its case, consisting of the testimony of the security guard and the victim, the court recessed for 15 minutes. After the recess Lee moved for a judgment of acquittal on the ground that the prosecution had failed to establish the required intent to deprive the victim of his property. Taking care to distinguish this motion from the earlier motion to dismiss on which it had "reserved the right to do some research," the court found sufficient evidence of intent to withstand any motion "directed to the Government's proof." *Id.,* at 12–13.

The defense then rested without presenting any evidence, and the court returned to the defense motions, again distinguishing between them. Speaking to defense counsel, the court said:

> "Your motion addressed to the Government's proof borders on being frivolous. Your client has been proven [*sic*] beyond any reasonable doubt in the world, there is no question about his guilt; none whatsoever." *Id.,* at 13.

The court nonetheless found it necessary to grant the motion to dismiss because of the failure of the information to charge either knowledge or intent:

> "The Federal law cases are legion that the sufficiency of the charges is dependent upon its containing the allega-

tions of all of the elements, and all of the elements here are established by the state statute.

"As much as I dislike doing so, I have no alternative but to grant your original motion of dismissal and the charge is dismissed." *Id.,* at 14.[2]

On September 25, 1974, Lee again was charged with the theft, this time in an indictment alleging all of the elements of the assimilated Indiana crime. On substantially the same evidence as had been presented at the first trial, he was convicted. On appeal, the Court of Appeals for the Seventh Circuit affirmed, rejecting Lee's claim that the second trial was barred by the Double Jeopardy Clause. 539 F. 2d 612 (1976). We granted certiorari to consider the double jeopardy issue. 429 U. S. 1037 (1977).

## II

In urging that his second trial was barred by the Double Jeopardy Clause, petitioner directs his principal arguments to the conduct of the first proceeding. He contends (i) that he should never have had to undergo the first trial because the court was made aware of the defective information before jeopardy had attached;[3] and (ii) that once the court had determined to hear evidence despite the defective charge, he was entitled to have the trial proceed to a formal finding of guilt or innocence. The Government responds that petitioner

---

[2] Federal Rule Crim. Proc. 7 (e) provides that a district court "may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

At no time in the course of the first trial did either the defense or the prosecution raise the possibility that the information might be amended under this provision.

[3] As this was a bench trial, jeopardy did not attach until the court began to hear evidence. *Serfass* v. *United States,* 420 U. S. 377, 388 (1975).

had only himself to blame in both respects. By the last-minute timing of his motion to dismiss, he virtually assured the attachment of jeopardy; and by failing to withdraw the motion after jeopardy had attached, he virtually invited the court to interrupt the proceedings before formalizing a finding on the merits.[4] We think that the Government has the better of the argument on both points under the principles explained in our decision in *United States* v. *Dinitz*, 424 U. S. 600 (1976).

## A

The arguments of both sides proceed from the premise that the result in this case would be no different had the District Court characterized its termination of the first trial as a declaration of mistrial rather than a dismissal of the information.[5] We too begin with this premise, although we think it requires qualification in light of *United States* v. *Jenkins*, 420 U. S. 358 (1975).

In *Jenkins* the District Court, having heard the evidence in a bench trial, dismissed an indictment charging refusal to submit to induction into the Armed Services. Under the law of the Second Circuit as it stood at the time of the offense, the

---

[4] Both sides assume that the District Court's statements, made to justify denial of Lee's motion for judgment of acquittal, that he had been "proven [*sic*] beyond any reasonable doubt in the world" and that there was "no question about his guilt; none whatsoever," *supra*, at 26, do not amount to a general finding of guilt. We agree that the court's comments, in the context in which they were made, cannot be viewed fairly as a general finding of guilt analogous to a jury verdict. See n. 7, *infra*.

[5] In a single footnote to his main brief, petitioner appears to rely on a distinction "between an action terminated by mistrial and one terminated by dismissal." Brief for Petitioner 18 n. 25. But in the text of that brief petitioner consistently assumes that the permissibility of retrial is controlled by the same considerations in either case. *Id.*, at 14–25. And at oral argument, counsel conceded that "whether [the termination of the first trial] is characterized as a mis-trial or characterized as a dismissal, the result in this case must be the same." Tr. of Oral Arg. 17.

induction order was improper and the defendant could not be convicted, although a subsequent decision of this Court had held otherwise. Reasoning that retroactive application of the intervening decision would be unfair, the District Court held that it could not "permit the criminal prosecution of the defendant . . . without seriously eroding fundamental and basic equitable principles of law." 349 F. Supp. 1068, 1073 (EDNY 1972), quoted at 420 U. S., at 362.[6] On this basis, and without entering any general finding of guilt or innocence, the District Court dismissed the indictment and discharged the defendant.

The issue before this Court was whether a Government appeal from the District Court's order would violate the Double Jeopardy Clause. Because of the absence of any general finding of guilt, it was clear that if the Government prevailed on the merits of its appeal, further trial proceedings would be needed to resolve "factual issues going to the elements of the offense charged." *Id.*, at 370.[7] We held that such proceedings would violate the double jeopardy guarantee: "The trial, which could have resulted in a judgment of conviction, has long since terminated in respondent's favor." *Ibid.* In resting our decision on this ground, we recognized that it was "of critical importance" that the proceedings in the trial court had

---

[6] The findings and conclusions accompanying the District Court's order left it unclear whether the court had ruled only that the intervening decision was not retroactive or had found, in addition, that the defendant's reliance on prior law had deprived him of the required criminal intent. See 420 U. S., at 362 n. 3, and 367–368.

[7] In *United States* v. *Wilson*, 420 U. S. 332 (1975), we held that the Double Jeopardy Clause would permit a Government appeal from a post-verdict ruling because the only result of reversal would be reinstatement of the verdict. But in *Jenkins* the District Court had not reached a general finding of guilt that could be reinstated if the Government prevailed on the merits of its appeal. We noted that "[e]ven if the District Court were to receive no additional evidence, it would still be necessary for it to make supplemental findings." 420 U. S., at 370.

terminated "in the defendant's favor" rather than in a mistrial. *Id.,* at 365 n. 7.[8]

The distinction drawn by *Jenkins* does not turn on whether the District Court labels its action a "dismissal" or a "declaration of mistrial." The critical question is whether the order contemplates an end to all prosecution of the defendant for the offense charged. A mistrial ruling invariably rests on grounds consistent with reprosecution, see *United States* v. *Jorn,* 400 U. S. 470, 476 (1971) (plurality opinion), while a dismissal may or may not do so. Where a midtrial dismissal is granted on the ground, correct or not, that the defendant simply cannot be convicted of the offense charged, *Jenkins* establishes that further prosecution is barred by the Double Jeopardy Clause.

In the present case, the proceedings against Lee cannot be said to have terminated in his favor. The dismissal clearly was not predicated on any judgment that Lee could never be prosecuted for or convicted of the theft of the two wallets. To the contrary, the District Court stressed that the only obstacle to a conviction was the fact that the information had been drawn improperly. The error, like any prosecutorial or judicial error that necessitates a mistrial, was one that could be avoided—absent any double jeopardy bar—by beginning anew the prosecution of the defendant. And there can be little doubt that the court granted the motion to dismiss in

---

[8] The Court of Appeals had held that the order dismissing the indictment was an acquittal since the District Court had relied on facts developed at trial and had concluded that the statute should not be applied to Jenkins "as a matter of fact." 490 F. 2d 868, 878 (CA2 1973), quoted at 420 U. S., at 364. Our disposition made it unnecessary to address the validity of this reasoning. We recently made it clear that a trial court's ruling in favor of the defendant is an acquittal only if it "actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States* v. *Martin Linen Supply Co.,* 430 U. S. 564, 571 (1977). In this case, petitioner concedes, as he must, that the District Court's termination of the first trial was not an acquittal.

this case in contemplation of just such a second prosecution. In short, the order entered by the District Court was functionally indistinguishable from a declaration of mistrial.[9]

We conclude that the distinction between dismissals and mistrials has no significance in the circumstances here presented and that established double jeopardy principles governing the permissibility of retrial after a declaration of mistrial are fully applicable.

B

When the District Court terminated the first trial in this case it did not act *sua sponte* but in response to a motion by defense counsel. In *United States* v. *Dinitz,* we examined the permissibility of retrial in an analogous situation where the trial court had granted a defense motion for mistrial.

In that case, after jeopardy had attached but well before verdict, the trial judge had excluded one of the defendant's lawyers from the courtroom for repeatedly disregarding his instructions. The defendant's remaining lawyer moved for a mistrial and the court granted the motion. The defendant was indicted again on the same charge, his double jeopardy claims were rejected, and he was convicted. When the double jeopardy issue reached this Court, we held that the defendant's second trial on the same charge did not violate the Fifth Amendment.

---

[9] In *Illinois* v. *Somerville,* 410 U. S. 458 (1973), a state prosecutor made precisely the same mistake as was made in this case in drafting an indictment for theft. Discovery of the defect in the course of trial led the trial court to declare a mistrial over the defendant's objection. We held that termination of the trial was dictated by "manifest necessity" under the standard first articulated in *United States* v. *Perez,* 9 Wheat. 579, 580 (1824). There is no reason to believe that *Somerville* would have been analyzed differently if the trial judge, like the District Court here, had labeled his action a "dismissal" rather than a mistrial. In *Jenkins* we referred specifically to *Somerville* in distinguishing proceedings that end in mistrials from those that end "in the defendant's favor." 420 U. S., at 365 n. 7.

Writing for the Court, MR. JUSTICE STEWART reiterated the rule that " 'where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error.' " 424 U. S., at 607, quoting *United States* v. *Jorn, supra,* at 485 (plurality opinion). Recognizing that a prejudicial error committed by court or prosecutor generally presents the defendant with a "Hobson's choice," MR. JUSTICE STEWART nevertheless stressed the importance of preserving the defendant's "primary control over the course to be followed in the event of such error." 424 U. S., at 609.

> "Even when judicial or prosecutorial error prejudices a defendant's prospects of securing an acquittal, he may nonetheless desire 'to go to the first jury and, perhaps, end the dispute then and there with an acquittal.' *United States* v. *Jorn, supra,* at 484. Our prior decisions recognize the defendant's right to pursue this course in the absence of circumstances of manifest necessity requiring a *sua sponte* judicial declaration of mistrial. But it is evident that when judicial or prosecutorial error seriously prejudices a defendant, he may have little interest in completing the trial and obtaining a verdict from the first jury. The defendant may reasonably conclude that a continuation of the tainted proceeding would result in a conviction followed by a lengthy appeal and, if a reversal is secured, by a second prosecution. In such circumstances, a defendant's mistrial request has objectives not unlike the interests served by the Double Jeopardy Clause—the avoidance of the anxiety, expense, and delay occasioned by multiple prosecutions." *Id.,* at 608.

Where the defendant, by requesting a mistrial, exercised his choice in favor of terminating the trial, the Double Jeopardy

Clause generally would not stand in the way of reprosecution. Only if the underlying error was "motivated by bad faith or undertaken to harass or prejudice," *id.*, at 611, would there be any barrier to retrial:

"The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by judge or prosecutor,' *United States* v. *Jorn, supra,* at 485, threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant. *Downum* v. *United States,* 372 U. S. [734, 736 (1963)]. . . ." *Ibid.*

It remains only to apply these principles to the present case.

## C

In this case, as in *Dinitz,* the proceedings were terminated at the defendant's request and with his consent. Although petitioner's motion to dismiss the information was initially denied in the course of opening arguments just before the attachment of jeopardy, the court's remarks left little doubt that the denial was subject to further consideration at an available opportunity in the proceedings—a fact of which the court reminded counsel after the close of the prosecution's evidence. Counsel for petitioner made no effort to withdraw the motion, either after the initial denial or after the court's reminder that the motion was still under consideration. And counsel offered no objection when the court, having expressed its views on petitioner's guilt, decided to terminate the proceedings without having entered any formal finding on the general issue.

It follows under *Dinitz* that there was no double jeopardy barrier to petitioner's retrial unless the judicial or prosecu-

torial error that prompted petitioner's motion was "intended to provoke" the motion or was otherwise "motivated by bad faith or undertaken to harass or prejudice" petitioner. *Supra,* at 33. Here, two underlying errors are alleged: the prosecutor's failure to draft the information properly and the court's denial of the motion to dismiss prior to the attachment of jeopardy. Neither error—even assuming the court's action could be so characterized—was the product of the kind of overreaching outlined in *Dinitz.* The drafting error was at most an act of negligence, as prejudicial to the Government as to the defendant. And the court's failure to postpone the taking of evidence until it could give full consideration to the defendant's motion, far from evidencing bad faith, was entirely reasonable in light of the last-minute timing of the motion and the failure of counsel to request a continuance or otherwise impress upon the court the importance to petitioner of not being placed in jeopardy on a defective charge.[10]

We hold that petitioner's retrial after dismissal of the defective information at his request did not violate the Double Jeopardy Clause.

*Affirmed.*

Mr. Justice Brennan, concurring.

I join the Court's opinion. In so doing, I want to make plain that I read the opinion as signaling no retreat from a cardinal principle of double jeopardy law: A criminal defendant possesses a "valued right to have his trial completed by a particular tribunal," *Wade* v. *Hunter,* 336 U. S. 684, 689 (1949), and the trial judge is obligated to take reasonable action in protection of this right, *United States* v. *Jorn,* 400 U. S. 470, 485–486 (1971) (plurality opinion). In the present case I agree with the Court that the conduct of the prosecutor

---

[10] What has been said is sufficient to dispose of petitioner's further claim that his retrial violated the Due Process Clause of the Fifth Amendment. Cf. *Palko* v. *Connecticut,* 302 U. S. 319, 328 (1937).

did not constitute unfair overreaching, and the conduct of the District Court was "entirely reasonable" in proceeding with the trial and ruling on petitioner's motion after further study. Although jeopardy had not officially attached, the defendant's motion to dismiss the information appeared so late in the day—during the opening statements—as virtually to guarantee that the trial judge would act as he did. This is especially true in the case of a challenge to an information charging an assimilated crime, for prudence might well counsel a federal judge's delaying any ruling pending further study. Certainly in this case the District Court cannot be faulted for failing to foresee that defendant's legal contention would be so easily resolved. While a continuance of the trial would have been a possibility if sought by petitioner or even on the court's own motion, I agree that the trial judge performed reasonably in not *sua sponte* stopping a trial in the middle of the opening statements and before any evidence was taken.

I emphasize, however, that an entirely different case would be presented if the petitioner had afforded the trial judge ample opportunity to rule on his motion prior to trial, and the court, in failing to take advantage of this opportunity, permitted the attachment of jeopardy before ordering the dismissal of the information. In such a circumstance, the court's action or inaction would effectively deprive petitioner of his "valued right" to receive a factual determination from the first empaneled factfinder and would subject a defendant to the "embarrassment, expense and ordeal" of a needless trial, *Green* v. *United States,* 355 U. S. 184, 187 (1957). Even if the defendant renews his motion at trial, it would not be accurate in such a situation to argue that the defense has made the choice to forgo the right of presenting its case to the first factfinder in order to attain a beneficial legal ruling. *United States* v. *Dinitz,* 424 U. S. 600 (1976); *United States* v. *Jorn, supra,* at 485. On the contrary, the defendant placed in this predicament by the trial judge would have done

everything in his power to receive a fair adjudication of his legal claims without compromising his right to proceed with the first factfinder. Honoring his double jeopardy claim thus not only is in keeping with the policies and interests served by the Clause, but also would further the cause of efficient judicial administration by encouraging defendants to present, and judges to rule, on legal claims prior to the clamor and heat of trial.

MR. JUSTICE REHNQUIST, concurring.

When two Terms ago the Court decided *Jenkins* v. *United States,* 420 U. S. 358 (1975), and *United States* v. *Wilson,* 420 U. S. 332 (1975), I had thought that a precedential foundation had been laid for double jeopardy analysis which, though perhaps somewhat oversimplified, would at least afford all of the many courts in the country which must decide such questions explicit guidance as to what we deemed the Constitution to require. I thought that dismissals (as opposed to mistrials) if they occurred at a stage of the proceeding after which jeopardy had attached, but prior to the factfinder's conclusion as to guilt or innocence, were final so far as the accused defendant was concerned and could not be appealed by the Government because retrial was barred by double jeopardy. This made the issue of double jeopardy turn very largely on temporal considerations—if the Court granted an order of dismissal during the factfinding stage of the proceedings, the defendant could not be reprosecuted, but if the dismissal came later, he could. I had thought that *United States* v. *Perez,* 9 Wheat. 579 (1824), and *Illinois* v. *Somerville,* 410 U. S. 458 (1973), offered a different basis for the treatment of mistrials, which by definition contemplate a second prosecution.

This "bright line" analysis was circumvented, however, by the Court's decision in *United States* v. *Martin Linen Supply Co.,* 430 U. S. 564 (1977), in which I did not take part.

There the Court held that even though the judgment of acquittal by the court (which I would not treat differently from a judgment of dismissal) occurred *after* the factfinding portion of the proceedings had aborted in a mistrial, but *before* the attachment of any jeopardy in a second trial, the second trial was nonetheless barred by double jeopardy.

In view of this development, I feel free to re-examine the assumptions I made when writing *Jenkins* and voting in *Wilson.* I think that the Court's opinion in the present case, though not completely in accord with those assumptions, is a well-articulated and historically defensible exposition of the Double Jeopardy Clause of the Bill of Rights. Since my assumptions did not at any rate survive *United States* v. *Martin Linen Supply Co., supra,* I join the Court's opinion.

MR. JUSTICE MARSHALL, dissenting.

It is apparent to me that this Court has today deliberately passed up an opportunity to exercise its supervisory power to prohibit rather than to condone fundamental errors in criminal procedure. At the close of its opinion, *ante,* at 34, the Court states the problem and its solution:

"Here, two underlying errors are alleged: the prosecutor's failure to draft the information properly and the court's denial of the motion to dismiss prior to the attachment of jeopardy. Neither error—even assuming the court's action could be so characterized—was the product of the kind of overreaching outlined in *Dinitz.* The drafting error was at most an act of negligence, as prejudicial to the Government as to the defendant. And the Court's failure to postpone the taking of evidence until it could give full consideration to the defendant's motion, far from evidencing bad faith, was entirely reasonable in light of the last-minute timing of the motion and the failure of counsel to request a continuance or otherwise

impress upon the court the importance to petitioner of not being placed in jeopardy on a defective charge."

Throughout today's opinion, my Brother POWELL puts all of the blame on petitioner's lawyer, none on the United States Attorney and, indeed, does not even mention him. *Sole* responsibility for the faulty information was in the office of the United States Attorney. Even when drafting errors are committed, they can be corrected before judgment, Fed. Rule Crim. Proc. 7 (e). In this case the United States Attorney never made any effort to defend the information and did not offer to amend and correct the error. Certainly most of the responsibility for the erroneous first trial rests with the Government. "[T]hough the attorney for the sovereign must prosecute with earnestness and vigor, he must always be faithful to his client's overriding interest that 'justice shall be done.'" *United States* v. *Agurs,* 427 U. S. 97, 110–111 (1976).[1]

When the motion to dismiss the information was made, the court ruled: "Well, since I have had no opportunity to study this at all, I will deny the motion at this time, but at my first opportunity I will check your citation and give consideration as appears to be warranted." App. 9. Less than two hours thereafter the court recessed for 15 minutes and dismissed the information with the following comment:

"As much as I dislike doing so, I have no alternative but to grant your original motion of dismissal and the charge is dismissed.

". . . I don't know who drafted it, but I can tell you if a law clerk of mine out of law school drafted something like that, I would send him back for a refresher course.

---

[1] "A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process." *Barker* v. *Wingo,* 407 U. S. 514, 527 (1972) (footnotes omitted).

You may carry that complete message back to your department." *Id.*, at 14.

Can there be any doubt that if the 15-minute recess had been taken at the beginning of the trial the motion would have been granted before jeopardy attached?[2]

Since petitioner was needlessly placed in jeopardy twice for the same offense over his objection, I would reverse his conviction.

---

[2] Since this was a bench trial without a jury there was not even a need to call a "recess"; the Judge could have postponed the taking of testimony for 15 minutes.