411 A.2d 786

**COMMONWEALTH of Pennsylvania**

v.

**Vincent L. PERRY, Alfred J. Scattolini and Robert A. Cal, Appellants.**

Superior Court of Pennsylvania.

Argued March 21, 1979.

Filed Oct. 12, 1979.

Carmen P. Belefonte, Media, for appellants.

Guy A. Messick, Assistant District Attorney, Media, for Commonwealth, appellee.

Before PRICE, SPAETH and LIPEZ, JJ.

PRICE, Judge:

The instant appeal is from an order of the trial court denying appellants' Motions to Dismiss based upon the claim that reprosecution was barred on the basis of double jeopardy. We affirm the denial.

On November 6, 1977, police conducted a warranted search of appellant-Cal's apartment in Boothwyn, Delaware County. As a result of the seizure of various items of contraband, appellants were charged with pool selling, bookmaking and conspiracy. Appellants subsequently filed a petition to suppress the evidence seized in the search. A hearing was held on February 10, 1978, at which Assistant District Attorney Joseph Dougherty represented the Commonwealth. At the hearing, it was determined that all of the appellants had been given improper *Miranda* warnings, although the prosecution only presented evidence as to statements made by Robert Cal; no testimony was elicited imputing any statements to the other appellants. Testimony was also presented to establish that four firearms had been seized and that a set of keys to the apartment had been found in the possession of Alfred Scattolini. Subsequent to the hearing, the court entered an order suppressing the four firearms and the statements of Robert Cal. The set of keys to the apartment was ruled admissible.

On February 22, 1978, appellants were brought to trial before a jury. At trial, the Commonwealth's case was presented by a different Assistant District Attorney, Michael Duncan. During the course of the trial four incidents occurred, the cumulative effect of which prompted the court to grant appellants' motions for mistrial.

The first incident occurred when the assistant district attorney inquired of a police witness whether any guns had been seized during the search of the apartment. Because the guns had been ruled inadmissible, the objection to the question was sustained and the jury instructed to disregard any questions regarding guns. Appellants' mistrial motions were denied.

The second incident occurred when the Commonwealth attorney was questioning a police witness regarding an item that had been found on the person of appellant Scattolini. The witness responded that $750 had been found during a search of Scattolini. Because this had not been listed on the inventory of items seized and had not been revealed during

the suppression hearing, the court sustained an objection and ordered the jury to disregard the testimony. Mistrial motions were again made for all defendants but denied. At side bar, the assistant district attorney pleaded surprise, stated that he had told the policeman not to mention the $750, and explained that he had posed his question with the expectation of eliciting testimony regarding the keys that had been seized from Scattolini.

Thereafter, the court granted the prosecution a recess to discuss with the policeman certain limitations upon the information the officer would be permitted to reveal.

After the recess, the officer was again testifying when the assistant district attorney inquired whether he had found a set of keys to the apartment on a table in the apartment. The question was met by an objection. At side bar, defense counsel stated that the question contradicted testimony that had been given at the suppression hearing during which it was stated that the keys had been taken from the person of Scattolini. The assistant district attorney explained that the officer had changed his account of where the keys had been found. The court refused to sustain the objection on the basis that the suppression testimony had been ambiguous regarding the location of the keys, and the court believed that the contradiction was not the result of an intentional misrepresentation by the prosecution.[1] The appellants did not move for a mistrial at this time.

After testimony resumed, the assistant district attorney inquired of the officer what he had done with the keys after they had been seized. The officer did not answer the question, but instead stated that Scattolini made a statement to the effect that he (Scattolini) owned the keys. An

1. The ambiguity regarding the earlier testimony as to the location of the keys may be traced, in part, to the fact that the testimony was not given in open court at the suppression hearing. Instead, the trial court notes in its opinion that after the suppression hearing had terminated, and while the parties were in the judge's chambers, the assistant district attorney mentioned that keys had been found in Scattolini's pocket. The judge then indicated that the keys were admissible as evidence.

objection was made and sustained on the basis that the court had ruled that the *Miranda* warnings given to all appellants at the time of arrest were defective, and the Commonwealth claimed at the suppression hearing that only appellant Cal had made any statements; there had been no mention of any statements having been made by Scattolini. Thereafter, the court granted appellants' mistrial motions on the grounds that the cumulative effect of the errors and the subsequent instructions to the jury to discount so many items of evidence were prejudicial to appellants' case.

After termination of the first trial, the Commonwealth commenced a second prosecution. Appellants filed a motion to dismiss the charges alleging a violation of their rights against double jeopardy. It is from the denial of that motion that appellants appeal.

■ Generally, when a mistrial is granted on a defendant's motion, or with his consent, the principles of double jeopardy do not bar a subsequent reprosecution. *See, e. g., United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion); *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977). In *United States v. Dinitz, supra*, the Supreme Court of the United States determined that this rule is applicable even when the defendant's mistrial motion is prompted by judicial or prosecutorial error.

> "[W]here circumstances develop not attributable to prosecutorial or judicial *overreaching*, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *Id.*, 472 Pa. at 607, 373 A.2d at 107. (emphasis added).

Thereafter, confusion existed as to what forms of "overreaching" would bar a subsequent retrial.

In *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 52 L.Ed.2d 80 (1977), the Court clarified its *Dinitz* ruling and established that the double jeopardy clause barred a retrial as a result of prosecutorial or judicial error "[o]nly if the

underlying error was 'motivated by bad faith or undertaken to harass or prejudice . . . .' " *Id.* at 33, 97 S.Ct. at 2147, *quoting United States v. Dinitz, supra,* 424 U.S. at 611, 96 S.Ct. at 1076.

In the instant case, the trial court found that the errors of the police and the prosecution that led to the granting of the mistrial were not committed purposely or in bad faith or with the intent to prevent appellants from obtaining an adjudication from the jury that had been selected to hear the case. Instead, the court found that the errors resulted from a lack of communication between the police and the prosecution, and between the assistant district attorney who had conducted the suppression hearing and his counterpart who was responsible for presenting the Commonwealth's case at trial. "There is no evidence, however, of prosecutorial conduct intended to provoke a mistrial." (Opinion at 3–4). After reviewing the transcript of the proceedings, we find that the conclusions of the court are fully supported by the record.

Appellants argue, however, that the rule in this Commonwealth relating to prosecutorial error is more expansive. They contend that double jeopardy results if the earlier mistrial is the result, not only of intentional misconduct, but also of "gross negligence" on the part of the prosecution. We find this contention to be without merit.

First, we note that the disposition of this case is governed by the double jeopardy clause of the federal constitution as interpreted by the Supreme Court of the United States.[2] As stated, that court has determined that error on the part of the prosecution resulting in a mistrial acts as a bar to a subsequent retrial only if the error was intentionally committed for the purpose of harassment or prejudice. Mere negligence, even gross negligence, will not bar a second prosecution. *See Divans v. California,* 434 U.S. 1303,

---

2. In *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Court ruled that the double jeopardy clause of the fifth amendment was binding on the states through the due process clause of the fourteenth amendment.

98 S.Ct. 1, 54 L.Ed.2d 14 (1977) (Rehnquist, J.); *Lee v. United States, supra; United States v. Dinitz, supra. See also United States v. King,* 590 F.2d 253 (8th Cir.), *cert. denied,* 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979); *Drayton v. Hayes,* 589 F.2d 117 (2d Cir. 1979).

Appellants argue that *Commonwealth v. Bolden, supra,* establishes a different rule for this Commonwealth. In that case, the Supreme Court of Pennsylvania was confronted with a murder case in which an earlier prosecution had terminated in a mistrial as a result of prosecutorial and judicial error. In holding that a retrial would not violate the appellant's double jeopardy rights, two justices reasoned,

"Therefore, we hold that if a mistrial is ordered on defendant's motion due to intentional or *grossly negligent* misconduct on the part of the prosecutor or judge, reprosecution is barred by the double jeopardy clause." *Id.,* 472 Pa. at 641, 373 A.2d at 109 (emphasis added).

■ Reviewing *Bolden,* we find that case unpersuasive for a number of reasons. First, we note that the court in *Bolden* was attempting to interpret the statement of the United States Supreme Court in *Dinitz* that "overreaching" on the part of the prosecution would bar a subsequent retrial. Unfortunately, the opinion of the Supreme Court of Pennsylvania was entered on April 28, 1977, approximately six weeks prior to the United States Supreme Court's opinion in *Lee* which established a more restrictive analysis regarding the type of "overreaching" that would bar a second prosecution. Moreover, even assuming that the Supreme Court of Pennsylvania was attempting to establish a more restrictive rule under the double jeopardy clause of the Pennsylvania Constitution[3] (an interpretation that does not appear to be supported by the language of the court in *Bolden* ), that rule would be inapplicable to the instant case, since the double jeopardy clause of the Pennsylvania Constitution has been held to govern capital offenses only. *See, e. g., Commonwealth v. Henderson,* 482 Pa. 359, 393 A.2d 1146

**3.** *See* Pa.Const., art. I, § 10.

(1978); *Commonwealth v. Simpson*, 310 Pa. 380, 165 A. 498 (1933).

Finally, we conclude that *Bolden* no longer expresses the views of the Pennsylvania Supreme Court regarding the proper test of double jeopardy. The excerpt from the *Bolden* decision quoted above reflected the views of only two members of the court. Four other justices either dissented on other grounds, or declined to discuss the type of prosecutorial misconduct that would bar a subsequent retrial. One year later, in *Commonwealth v. Potter*, 478 Pa. 251, 386 A.2d 918 (1978), the Pennsylvania Supreme Court was again confronted with a retrial that resulted from earlier prosecutorial error. This time, the court had the benefit of the United States Supreme Court opinion in *Lee* as a proper guide in interpreting the earlier *Dinitz* decision. In an opinion in support of affirmance expressing the views of three justices, the Supreme Court of Pennsylvania reasoned that "*Dinitz* requires bad faith harassment intended to goad the defendant into requesting a mistrial before reprosecution will be barred," *Id.*, 478 Pa. at 266, 386 A.2d at 925, *quoting United States v. Martin*, 561 F.2d 135, 142 n. 1 (8th Cir. 1977) (Henley, J., dissenting), and that unintentional overreaching, even in the form of gross negligence, will not bar a retrial. In an opinion in support of reversal based upon other grounds, Justice Nix stated, "I agree with the majority view that the third trial was not barred by the Double Jeopardy Clause of the Constitution of the United States." *Id.* 478 Pa. at 287, 386 A.2d at 936. Two justices filed opinions in support of reversal on the basis of *Bolden*. Therefore, of the six justices participating in the consideration of the case, four justices (those in the opinion in support of affirmance plus Justice Nix) expressed their views that "gross negligence" was not the proper standard by which to adjudge prosecutorial error and that the lead decision in *Bolden* was not the law of this Commonwealth. This conclusion was reaffirmed in a recent opinion, *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979).

420

Therefore, because the proper standard is not one of gross negligence and because the prosecution did not intentionally commit error in the first trial with the goal of prompting a mistrial, we find that a reprosecution of appellants will not violate their federal double jeopardy rights.

The order of the trial court is affirmed.

SPAETH, J., concurs in the result.