422 A.2d 539

COMMONWEALTH of Pennsylvania

v.

Phil Smith AFRICA (at No. 1432), Appellant.

COMMONWEALTH of Pennsylvania

v.

Janet Holloway AFRICA (at No. 1499), Appellant.

COMMONWEALTH of Pennsylvania

v.

Gail Sims AFRICA (at No. 1410), Appellant.

Superior Court of Pennsylvania.

Argued Dec. 4, 1979 (at No. 1432).

Submitted Dec. 6, 1979 (at Nos. 1410 & 1499).

Filed Oct. 10, 1980.

420

Bruce A. Franzel, Philadelphia, for Phil Smith Africa, appellant.

Joel W. Todd, Philadelphia, for Janet Holloway Africa, appellant.

Fred M. Feder, Philadelphia, for Gail Sims Africa, appellant.

Andrew B. Cohn, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before PRICE, HOFFMAN and WATKINS, JJ.

PRICE, Judge:

Appellants appeal from orders of the court of common pleas denying their motions to dismiss the indictments filed against them. They contend that prosecution on the indict-

ments is barred on the basis of double jeopardy and that the trial court erred in refusing to sustain their motions. We disagree.

On May 20, 1977, appellants and five other co–defendants[1] who were either sympathizers or members of an organization known as MOVE were involved in a confrontation with police at the group's Philadelphia headquarters. As a consequence, they were charged in various combinations with the following offenses: criminal conspiracy,[2] riot,[3] possessing instruments of crime (generally),[4] possessing instruments of crime (concealed),[5] possessing prohibited offensive weapons,[6] reckless endangerment,[7] terroristic threats,[8] failure to disperse,[9] and disorderly conduct.[10] During the incident on May 20, 1977, a total of thirty–seven photographs were taken of the MOVE headquarters depicting appellants in various activities. These photographs were provided to appellants pursuant to a pretrial motion, and the assistant district attorney assured appellants that any testimony by police identifying them as having been present at the scene of the crime would come solely from direct obser-

1. Appeals from three of the other co–defendants raising the double jeopardy issue are also pending before this court at numbers 1344 October Term, 1979 (Delbert Orr Africa), 1460 October Term, 1979 (Merle Austin Africa) and 1464 October Term, 1979 (Edward Goodman Africa). The appeal of defendant Consuella Dotson was docketed at number 1506 October Term, 1979, but has been non prossed, and the final defendant, Sharon Penn, has not taken an appeal from the order of the trial court.

2. 18 Pa.C.S. § 903.

3. 18 Pa.C.S. § 5501.

4. 18 Pa.C.S. § 907(a).

5. 18 Pa.C.S. § 907(b).

6. 18 Pa.C.S. § 908.

7. 18 Pa.C.S. § 2705.

8. 18 Pa.C.S. § 2706.

9. 18 Pa.C.S. § 5502.

10. 18 Pa.C.S. § 5503.

vation on May 20, 1977, and the prior contacts of the police with appellants. Although it is unclear whether an express disclaimer was made that the police would not be shown the photographs taken on May 20, this was the implication conveyed during pretrial proceedings.

On December 18, 1978, a nonjury trial commenced. At trial, two of the defendants were represented by counsel while all of the other defendants, including appellants, proceeded *pro se.* On December 19, 1978, Officer Julius Armstrong of the Philadelphia Police Department was called to testify as to events that he witnessed on May 20, 1977. During his testimony, Officer Armstrong identified six of the defendants as having been present at MOVE headquarters on that date. He did not, however, identify appellants Phil Smith Africa and Gail Sims Africa. He further asserted that his identifications were based upon observations of the six defendants during prior incidents when MOVE had engaged in various picketing activities in Philadelphia.

The next day, December 20, 1978, Officer Armstrong again testified and was cross–examined by attorney A. Benjamin Johnson, counsel for co–defendant Consuella Dotson. During cross–examination, the officer testified that he had been shown twenty to thirty photographs taken on May 20, 1977, which depicted all eight of the defendants engaged in various activities at MOVE headquarters. Immediately, attorney Johnson moved for a mistrial or dismissal of the charges on the basis that the defendants had been led to believe that Officer Armstrong had not been shown any photographs, and, thus to their prejudice, the defendants had not sought to suppress the identification testimony of the officer. Following this motion, the record becomes confused with various defendants making motions for mistrial or dismissal, some making motions strictly for dismissal but not for a mistrial, and some engaging in speeches denouncing the legal system, the District Attorney's Office and the Philadelphia Police Department. With remarkable restraint, the Honorable William Marutani attempted to ascertain the nature of each defendant's motion. In particu-

lar, appellant Janet Holloway Africa requested dismissal of the charges or mistrial, appellant Phil Smith Africa requested dismissal but did not request a mistrial, and appellant Gail Sims Africa did not make a motion for either dismissal or a mistrial.

After submission of the motions, Judge Marutani admitted he was uncertain whether he could purge the testimony from his consideration of the case, and was concerned that an appearance of impropriety would remain even if he made a self–serving declaration that he would not consider the prejudicial testimony. A recess was then taken after which the judge stated that he could decide the case without consideration of the identification testimony, but nevertheless felt compelled to declare a mistrial on the basis of the appearance of impropriety.

Appellants now contend that reprosecution on the instant charges would violate double jeopardy. In addressing these claims, a distinction must be made between appellant Janet Holloway Africa who specifically requested the granting of a mistrial, and appellants Phil Smith Africa and Gail Sims Africa who failed to assert such a motion.

■ First, with respect to appellant Janet Holloway Africa, we note that when a mistrial is granted on a defendant's motion, the principles of double jeopardy do not bar a subsequent reprosecution. *See, e. g., United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion); *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977). In *United States v. Dinitz, supra,* the United States Supreme Court determined that this rule is applicable even when the defendant's mistrial motion is prompted by prosecutorial or judicial error. In *Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 52 L.Ed.2d 80 (1977), the Court expanded its *Dinitz* ruling and established that the double jeopardy provision bars reprosecution if a mistrial is declared on a defendant's motion as a result of prosecutorial error "[o]nly if the underlying error was 'motivated by bad faith or undertaken to harass or prejudice

. . . .' " *Id.* at 33, 97 S.Ct. at 2147, *quoting, United States v. Dinitz, supra* 424 U.S. at 611, 96 S.Ct. at 1081.[11]

In the instant case, the trial court found that the error by the prosecution that led to the granting of the mistrial was not committed purposely or in bad faith with the intent to prevent the defendants from obtaining an adjudication from the finder of fact that had been selected to hear the case. Instead, testimony established that Officer Armstrong had been exposed to the photographs along with a group of other policemen in February 1978, during an unrelated trial of an associate, Sue Africa. Either the assistant district attorney conducting the instant case did not recall that exposure or thought that it was innocuous and of no consequence in affecting the identification, especially in light of Officer Armstrong's express statement that his identification of the six defendants was the result of prior contacts and was not the product of having viewed the photographs in February of 1978. Under these circumstances, we agree with the trial court that the prosecution's failure to disclose the earlier photographic exposure does not bar reprosecution of Janet Holloway Africa.

Before discussing the allegations of appellants Phil Smith Africa and Gail Sims Africa, we must first address the Commonwealth's contention that the declaration of a mistrial as to those two defendants was also granted upon their request. The Commonwealth argues that both appellants acquiesced in the motion for mistrial proffered by co-defendant Janet Holloway Africa, or with reference to Phil Smith Africa, his request for dismissal should be equated

11. Appellant Janet Holloway Africa argues that prosecutorial error barring a retrial is not restricted to intentional misconduct and includes "gross negligence," citing *Commonwealth v. Bolden, supra* 472 Pa. at 641, 373 A.2d at 108. As has been stated in other cases, the holding in *Commonwealth v. Bolden* did not reflect the views of the majority of the Pennsylvania Supreme Court, and was based upon an erroneous interpretation of *United States v. Dinitz, supra,* and the proper standard is one of bad faith conduct. *See Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979); *Commonwealth v. Potter,* 478 Pa. 251, 386 A.2d 918 (1978) (opinion in support of affirmance); *Commonwealth v. Perry,* 270 Pa.Super. 412, 411 A.2d 786 (1979).

with a request for a mistrial. The facts relating to these contentions are as follows.

After the initial motion for a mistrial or dismissal of the charges by counsel for Consuella Dotson, the trial judge inquired whether all other defendants joined in that motion. He was informed that they did not and that each defendant would make his or her own motion. Appellant Janet Holloway Africa then made a motion for mistrial or dismissal and stated that "[t]he rest of my brothers and sisters would like to join in the motion." (N.T. 4.54). Phil Smith Africa then stated that he joined "in my sister Janet Africa's motion." (N.T. 4.56). Shortly thereafter, Phil Smith Africa retracted his joinder and stated that he was requesting dismissal and not a mistrial. At least one other defendant followed this theme and stated that he also wished to secure a dismissal of the charges but did not want a mistrial. Appellant Gail Sims Africa did not make a statement at this time.

■ The Commonwealth contends that the request for a mistrial contained in the motion of Janet Holloway Africa. was imputed to both of the other appellants by her statement that "[t]he rest of my brothers and sisters would like to join in the motion." We find this contention is without merit, for it was contrary to the earlier pronouncement that all defendants did not join in a similar motion by Consuella Dotson and that each defendant would make his or her own motion. Moreover, while appellant Phil Smith Africa initially joined in the motion for mistrial, he later retracted that statement and expressly moved for dismissal and not for a mistrial. Under these circumstances, we conclude that neither Phil Smith Africa nor Gail Sims Africa adopted the motion of Janet Holloway Africa, nor did Phil Smith Africa's initial joinder in that motion preclude his later repudiation prior to the declaration of mistrial.

■ The Commonwealth also contends that Phil Smith Africa's [12] motion for dismissal should be deemed equivalent

12. The prosecution contends that even if the motion of Janet Holloway Africa for a mistrial is not imputed to all of the defendants, the

to a request for a mistrial since either motion, if granted, would have had the effect of terminating the court proceedings at that point. In support of its contention, the prosecution cites two cases, *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 651, *reh. denied*, 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 197 (1978); and *Lee v. United States, supra*, for the proposition that a motion for dismissal and a motion for a mistrial may be equivalent for purposes of double jeopardy analysis.

In *Lee*, the defendant was charged with theft, but under Indiana law the information charging him with the offense was technically defective because it failed to allege the proper mens rea. When this defect was brought to the court's attention prior to the commencement of trial by means of a motion for dismissal, the judge took the motion under advisement. At the completion of trial and prior to the submission of a verdict, the court granted the motion to dismiss on the basis of the technical defect in the information. In determining whether the order barred reprosecution, the defendant argued that the court order was for a dismissal of the charges and not just a mistrial. In holding that double jeopardy did not bar reprosecution, the Supreme Court reasoned that under the facts of that case, there was no difference between a motion for dismissal and a motion for a mistrial. Unlike some dismissals which serve as an adjudication that the defendant may not be convicted of the offense charged, the dismissal in *Lee* was not equivalent to such an adjudication and was more akin to the granting of a mistrial as a result of error occurring during trial. In *United States v. Scott, supra*, a similar distinction was made when charges were dismissed as a result of prejudice arising

motions for dismissal by Phil Smith Africa and one other defendant should be imputed to Gail Sims Africa, and because these motions were equivalent to a motion for mistrial, the grant of a mistrial to Gail Sims Africa should be deemed to have been made upon her request. We find this contention is without merit since the motion for dismissal is not, in the instant case, equivalent to a motion for mistrial and, as in the instance of the motion by Janet Holloway Africa, the silence of Gail Sims Africa cannot be deemed an adoption of Phil Smith Africa's motion for dismissal.

from preindictment delay, but the dismissal was not an adjudication of innocence on the merits of the charges.

In contrast to *Lee* and *Scott*, we believe that the motion for dismissal submitted by appellant Phil Smith Africa, while technically incorrect under Pennsylvania procedure, was a request for a determination of the charges in his favor based upon the merits.[13] While he was requesting a termination of the trial at that stage, this request was based upon an assertion of innocence, and he was not seeking a mere termination of the instant trial to permit the Commonwealth to commence its prosecution anew. Under these circumstances, we believe that his request was not equivalent to that of a motion for mistrial, and the entry of a mistrial as to Phil Smith Africa and Gail Sims Africa was *sua sponte* and not the result of any request, express or implied.

Addressing the merits of their contention that the *sua sponte* declaration of mistrial precludes reprosecution, we note that Pa.R.Crim.P. 1118(b) permits a trial judge to declare a mistrial absent a defendant's motion "only for reasons of manifest necessity." [14] Rather than adopting a

---

13. A motion for dismissal may only be brought prior to the commencement of trial, and the alleged error by the prosecution would not serve as the basis for a motion for dismissal. Rather, based upon his protestations of innocence as the basis for the "dismissal" motion, we view the motion as a demurrer to the evidence which should have been delayed until completion of the Commonwealth's case. *See Commonwealth v. Mason*, 483 Pa. 409, 397 A.2d 408 (1979); *Commonwealth v. Hunt*, 256 Pa.Super. 140, 389 A.2d 640 (1978).

14. The full text of Pa.R.Crim.P. 1118(b) is as follows:
"When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity."
Appellants contend that because only a defendant may move for a mistrial in response to a prejudicial event occurring at trial, this prohibits the *sua sponte* declaration of a mistrial by the trial court on the same basis. They contend that the provision empowering the trial judge to *sua sponte* grant a mistrial for reasons of manifest necessity applies only in situations such as when the jury is unable to reach a verdict, *see, e. g., United States v. Sanford*, 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976); *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), but does afford such power when the event is prejudicial to the defendant and he elects not to move for

rigid test for manifest necessity, the courts in this Commonwealth have preferred to judge each case in light of the principles enunciated in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824):

"We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office."

In *Illinois v. Somerville*, 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973), the court undertook an analysis of events that may result in prejudice requiring a *sua sponte* declaration of a mistrial.

"A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial."

In the instant case, appellants argue that Judge Marutani's concern for the appearance of impropriety does not

a mistrial. We find this contention to be without merit and note that a trial court may properly declare a mistrial to avoid prejudice to a criminal defendant even absent a motion filed on his behalf. *See Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616, *cert. denied*, 417 U.S. 949, 94 S.Ct. 3078, 41 L.Ed.2d 670 (1974); *Commonwealth v. Wilson*, 257 Pa.Super. 329, 390 A.2d 847 (1978).

constitute manifest necessity requiring the declaration of a mistrial. Without resolving this issue, we hold that a mistrial was properly declared because, despite his later disclaimer, the statements by the judge raised a question whether appellants could receive an impartial trial.

The trial judge, who was also to serve as the finder of fact in the instant case, admitted initially that he might be unable to purge the challenged testimony from consideration in reaching a verdict. Although he later professed that he could decide the case without reference to the information, we believe that his earlier admission raised the spectre that an impartial trial was not possible. Moreover, during the discussion of the defendants' motions, the judge questioned whether Officer Armstrong's testimony had in fact been harmful since it merely established the presence of some of the defendants at MOVE headquarters on May 20, 1977; he intimated that, in his mind, the Commonwealth still had not proven the elements of the particular offenses. The judge then recalled a recent nonjury trial in which he had been required to acquit the defendant because the Commonwealth had not established the elements of the offense beyond a reasonable doubt, but in which the judge personally believed the defendant was guilty. Examining his likely reaction if he were placed in a similar posture in the instant case, the judge stated,

"[A]s I mentioned to you the other day, where a person had been–no question in mind whatsoever–was implicated in a rape, I let him go out of the courtroom. I felt sick, but under the law there was not enough. *Now, whether I would do that again I don't know.*" N.T. 4.82–83 (emphasis added).

In light of these admissions, we agree that there was a strong possibility that an impartial verdict could not be reached, and under those circumstances, the judge did not err in *sua sponte* declaring a mistrial. *See Thompson v. United States,* 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894) (member of jury had also been member of grand jury that indicted the defendant); *Simmons v. United States,* 142 U.S.

148, 12 S.Ct. 171, 35 L.Ed. 968 (1891) (member of jury a friend of the defendant); *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616, *cert. denied*, 417 U.S. 949, 94 S.Ct. 3078, 41 L.Ed.2d 670 (1974) (father of victim served as tipstaff and attended jurors during defendant's trial); *Commonwealth v. Wilson*, 257 Pa.Super. 329, 390 A.2d 847 (1978) (witness' reference to "mug shots" of defendant).

■ Finally, although not raised by appellants Phil Smith Africa and Gail Sims Africa, we feel compelled to comment whether a *sua sponte* declaration of mistrial was manifestly necessary as to them since they had not been identified as having been present at MOVE headquarters on May 20, 1977. Although manifest necessity was clearly established for those defendants who had been identified during the testimony of Officer Armstrong, Phil Smith Africa and Gail Sims Africa were arguably not prejudiced even if the trial judge could not, as he admitted, purge the testimony from his consideration of the case. Nevertheless, given the manner in which the officer's testimony permeated the case and the in tandem manner in which the defendant members of MOVE conducted there cases,[15] plus the pronouncement by the court that acquittal would be difficult even if the elements of the offenses were not established, we believe that the *sua sponte* declaration of a mistrial was manifestly necessary as to the remaining appellants. Therefore, the double jeopardy provision does not bar reprosecution.

The orders of the trial court are affirmed.

HOFFMAN, J., files a concurring and dissenting opinion.

15. The defendants who were members of MOVE viewed the trial as a persecution for their social philosophy and contended throughout that they wished to be tried together and treated as a group and not as individuals. Pretrial motions and proceedings were conducted as a group and the only divergence came with respect to the motions for mistrial as opposed to dismissal in response to the testimony of Officer Armstrong. Indeed, in their briefs, Phil Smith Africa and Gail Sims Africa present their arguments as if they were homologous to those defendants who had not requested a mistrial but had been identified by Officer Armstrong. They have not asserted their distinguishing element in not having been identified as an additional factor in determining whether manifest necessity existed to declare a mistrial as to them.

HOFFMAN, Judge, concurring and dissenting:

I agree with the majority that the principles of double jeopardy do not bar the reprosecution of appellant Janet Holloway Africa because the prosecutorial error which prompted her to request a mistrial was not "motivated by bad faith or undertaken to harass or prejudice." *United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976). *See also Lee v. United States,* 432 U.S. 23, 33, 97 S.Ct. 2141, 2147, 52 L.Ed.2d 80 (1977). I agree also that the declaration of a mistrial as to appellants Phil Smith Africa and Gail Sims Africa must be reviewed in light of the "manifest necessity" standard set forth in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). I believe, however, that there was no manifest necessity for the declaration of a mistrial as to these latter two appellants. Accordingly, I would affirm as to appellant Janet Holloway Africa, but reverse as to appellants Phil Smith Africa and Gail Sims Africa and dismiss the charges against them.

"No rigid rule for determining what constitutes 'manifest necessity' for a mistrial has been established." *Commonwealth v. Robson,* 461 Pa. 615, 622, 337 A.2d 573, 576 (1975). Rather, "[e]ach case must turn on its facts." *Downum v. United States,* 372 U.S. 734, 737, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100 (1963). Nonetheless, courts have stressed the critical nature of the trial court's decision whether or not to declare a mistrial *sua sponte.* In *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion), Justice HARLAN wrote that "the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option [to have his trial completed by a particular tribunal] until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Id.* at 485, 91 S.Ct. at 557. *See also Commonwealth ex rel. Walton v. Aytch,* 466 Pa. 172, 352 A.2d 4 (1976); *Commonwealth v. Stewart,* 456 Pa. 447, 317 A.2d 616 (1974). Moreover, in *Downum v. United States, supra,* the Court stated that in determining whether a mistrial was

properly declared "[w]e resolve any doubt 'in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion.'" 372 U.S. at 738, 83 S.Ct. at 1035 (quoting *United States v. Watson*, 28 Fed.Cas.No. 16,651 pp. 499, 501 (S.D.N.Y.1868)). *See also Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972). Speaking generally, the Supreme Court stated in *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), that "[a] trial judge properly exercises his discretion to declare a mistrial *if an impartial verdict cannot be reached*, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. *Id.* at 464, 93 S.Ct. at 1070 (emphasis added).

In the present case the majority states that certain "statements by the judge raised a question whether appellants could receive an impartial trial." Majority opinion at 544. I disagree. Any "question" about whether the trial judge could render an impartial verdict was answered by the judge himself when he "stated that he could decide the case without consideration of the identification testimony." *Id.* at 541. The statements to which the majority refers in no way contradict the judge's ultimate conclusion that he could render an impartial verdict. The majority's narrow focus on the judge's initial expressions of reservation ignore the judge's final resolution of a question which he was best qualified to answer. In my view, the record belies the majority's conclusion that "there was a strong possibility that an impartial verdict could not be reached." *Id.* at 545. Moreover, there can be no doubt that the trial judge's stated reason for declaring a mistrial–his desire to avoid the appearance of impropriety–does not amount to manifest necessity to abort a trial in which the judge himself sat as the trier of fact. Accordingly, I dissent from that portion of the majority's opinion which holds that the double jeopardy clause does not bar reprosecution of appellants Phil Smith Africa and Gail Sims Africa.