**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Patricia Lynn OPAGER,**
**Defendant-Appellant.**

**No. 79–1983.**

United States Court of Appeals,
Fifth Circuit.

May 2, 1980.

David A. Russell, Edgar Miller, Miami, Fla., for defendant-appellant.

Linda Collins Hertz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before GEWIN, RUBIN and SAM D. JOHNSON, Circuit Judges.

GEWIN, Circuit Judge:

Defendant Opager was convicted of possession with intent to distribute 451.6 grams of cocaine in October 1977 and sentenced to 54 months imprisonment followed by a special parole term of three years. Her conviction was reversed by this court by opinion dated February 14, 1979. *United States v. Opager*, 589 F.2d 799 (5th Cir. 1979).[1] The reversal was founded in part on the government's failure to obey a district court order to disclose the whereabouts of its confidential informant.[2] The prosecutor immediately scheduled the case for retrial. Appellant subsequently moved to dismiss the indictment on double jeopardy grounds.[3] On April 17, 1979 the lower court denied this motion.[4] Appellant filed notice of appeal immediately. On the particular facts and circumstances of this case we affirm.

## Statement of the Case

On February 23, 1977 appellant sold about one pound of 90.4 percent pure cocaine to three buyers, two of whom turned out to be law enforcement officers. The third was an acquaintance of Opager and a government informant named Philip Posner.

Prior to trial, on April 15, 1977, the United States magistrate, pursuant to appellant's motion, ordered the government to disclose Posner's whereabouts to appellant. The magistrate's order was affirmed by the district court on April 29, 1977,[5] but the government failed to disclose the informa-

1. The opinion and the mandate state that the case was reversed. The words "and remanded", for whatever they are worth, were not included in the opinion or the mandate.

2. The other ground for reversal was the erroneous exclusion of "certain business records that would have refuted part of the informant's testimony." *United States v. Opager*, 589 F.2d 799, 801 (5th Cir. 1979).

3. The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that, "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S.Const. amend. V.

4. In denying the motion the court stated:

Without a clear direction from the Court of Appeals that the Government's behavior in this case was so egregious as to require the dismissal of the indictment the court will not do so. In this case the Fifth Amendment does not require it.

Record p. 816.

5. The government challenged the order, contending that "disclosure was unnecessary since Opager knew Posner's identity and since Posner did not 'wish' to speak with defense counsel prior to trial. The government persisted in these arguments in response to defendant's subsequent motions to dismiss for failure to

tion as ordered. On May 9 and again on May 19, 1977 appellant moved to dismiss for failure of the government to obey the court's order. At a hearing on the first motion, the court declined to dismiss the indictment but did direct the government to produce Posner or disclose his whereabouts. The court never ruled on the second motion. *See Opager*, 589 F.2d at 804. This court held, in reversing Opager's conviction, that "[t]he government's refusal to obey the District Court's disclosure order not only affronted the Court and prejudiced Opager's efforts to defend herself. [It] . . . also frustrated the important federal policy favoring broad disclosure in criminal cases." *Id.* at 805.

The sole issue presented by this appeal is whether double jeopardy bars retrial of a defendant in these particular circumstances where reversal of a conviction on the same indictment presented here was predicated in part on the failure of the government to obey a court order.

### Application of Double Jeopardy Principles

The Supreme Court has addressed itself to the underlying policy of the double jeopardy clause on many occasions. One recent statement succinctly presents the fundamental purpose of this constitutional safeguard.

The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense. See *United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232, 241; *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664. Underlying this constitutional safeguard is the belief that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and

disclose." *United States v. Opager*, 589 F.2d 799, 804 n. 10 (5th Cir. 1979).

ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 [77 Ohio Law Abst. 202, 61 A.L.R.2d 1119].

*United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976).

### Double Jeopardy Following Mistrial

█ It has long been the rule that the purposes of the double jeopardy clause are not endangered by retrial after a mistrial has been ordered in most circumstances. *See United States v. Perez*, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824).[6] This is particularly true where a mistrial is granted·at the defendant's request. *See United States v. Tateo*, 377 U.S. 463, 467, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964). The Supreme Court in *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), discussed the situation where a defendant moves for and obtains a mistrial and then seeks to bar retrial by invocation of the double jeopardy clause.

If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error.

400 U.S. at 485, 91 S.Ct. at 557. Footnote twelve following the above quote from *Jorn* recognizes a possible exception, however. "Conversely, where a defendant's mistrial motion is necessitated by judicial or prose-

6. *See also United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); *United States v. Starling*, 571 F.2d 934, 938 (5th Cir. 1978).

cutorial impropriety designed to avoid an acquittal, reprosecution might well be barred." *Id.* at 485 n.12, 91 S.Ct. at 557.

The case that presented just that exception arose in this circuit in *United States v. Kessler*, 530 F.2d 1246 (5th Cir. 1976). In *Kessler* this court found that intentional misconduct by the government in presenting false evidence to the court seriously prejudiced the defendant and held that "[s]uch intentional misconduct is 'prosecutorial overreaching' and is one of the 'type[s] of oppressive practices at which the double-jeopardy prohibition is aimed.'" *Id.* at 1257–58, *quoting Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949).

The criteria for finding prosecutorial overreaching, however, are not lax. While *Kessler* recognized that prosecutorial overreaching bars retrial even where defendants requested the mistrial, the court noted that to find prosecutorial overreaching it must be determined following "a stringent analysis of the prosecutor's conduct [and] considering the totality of the circumstances prior to the mistrial . . . [that] the Government . . ., through 'gross negligence or intentional misconduct,[7] caused aggravated circumstances to develop which 'seriously prejudice[d] a defendant' causing him to 'reasonably conclude that a continuation of the tainted proceeding would result in a conviction.'"[8] *Kessler*, 530 F.2d at 1256 (footnotes added).

■ The Supreme Court in *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) was perhaps even more explicit in describing the type of overreaching necessary to bar retrial after mistrial.

> The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where

"bad-faith conduct by judge or prosecutor", *United States v. Jorn*, [400 U.S.] at 485, 91 S.Ct. 547 at 557, [27 L.Ed.2d 543,] threatens the "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant. *Downum v. United States*, 372 U.S. [734] at 736, 83 S.Ct. 1033 at 1034, [10 L.Ed.2d 100].

424 U.S. at 611, 96 S.Ct. at 1081. *Jorn, Dinitz* and *Kessler* clearly indicate that contrary to the ordinary situation following a granted motion for mistrial, if the motion was provoked by bad faith prosecutorial overreaching, the double jeopardy clause provides a bar to retrial. In those rare cases "the interests protected by the Double Jeopardy Clause outweigh the public interest in conducting a second trial ending in acquittal or conviction." *Kessler*, 530 F.2d at 1255–56.

### Double Jeopardy Following Dismissal

■ In the case now before the court of course, no *motion for mistrial* was made on the ground of prosecutorial overreaching. The error on which reversal of Opager's first trial conviction was predicated was the failure of the government to comply with a disclosure order prior to trial. The failure to disclose provoked two *motions to dismiss the indictment*. One of the motions was denied; the other was apparently never ruled on.

The Supreme Court has provided sufficient foundation for the supposition that had Opager's motions to dismiss been granted, this case would be on the same footing as one in which a motion for mistrial has been granted. In *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), the Court recognized the distinction between mistrial and midtrial dismissal drawn by *United States v. Jenkins*, 420 U.S. 358,

---

7. *United States v. Beasley*, 479 F.2d 1124, 1126 (5th Cir.), *cert. denied*, 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158, *reh. denied*, 414 U.S. 1052, 94 S.Ct. 557, 38 L.Ed.2d 340 (1973).

8. *United States v. Dinitz*, 424 U.S. 600, 608, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976).

95 S.Ct. 1006, 43 L.Ed.2d 250 (1975),[9] but rules that the distinction makes no difference where a pretrial dismissal is involved. *Lee* established that in these circumstances it matters not "whether [the termination of the first trial] is characterized as a mis-trial or characterized as a dismissal." *Lee,* 432 U.S. at 28 n.5, 97 S.Ct. at 2144, *quoting* Transcript of Oral Argument 17. There is no doubt, therefore, that the rule of *Jorn, Dinitz* and *Kessler* would apply to Opager's motions to dismiss based on prosecutorial misconduct had the motions been granted and bad faith overreaching by the government found to be present in this case.

### Double Jeopardy Following Reversal

Opager, through counsel, contends that the new question presented by this case is whether retrial must be barred where prosecutorial overreaching exists, motions to dismiss are denied and the case proceeds to conviction and subsequent reversal on the grounds of overreaching by the government. The argument has some support in logic.

If motions for mistrial or dismissal were granted due to bad faith prosecutorial overreaching as in *Kessler*, there is no doubt that the interests protected by the double jeopardy clause would bar retrial. If the same bad faith overreaching provoked the same motions but a trial judge erroneously denied the motions and the trial proceeded to conviction, the reasoning and foundation of the double jeopardy clause, as interpreted in the key cases in this area[10] appear to

be no less violated by retrial following reversal of the trial judge's erroneous ruling. The policies underlying the double jeopardy clause may be undermined by a tainted proceeding allowed to be completed only because of a trial judge's erroneous denial of motions for mistrial or motions to dismiss.

The government contends that in this case *Kessler* and its underlying reasoning does not apply because Opager retained her "valued right to have [her] trial completed by a particular tribunal" *Dinitz,* 424 U.S. at 606, 96 S.Ct. at 1079. It should first be noted, however, that this "valued right" does not constitute a complete statement of the interests protected by the double jeopardy clause. As stated in *Dinitz,* it is involved in cases where mistrial is granted and it also is a factor in cases such as *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949), in which postponement of a hearing due to illness of witnesses was claimed to subject a defendant to double jeopardy.[11] It does not follow, however, that this consideration must be involved in every case invoking the double jeopardy clause, nor that this "valued right" is all that is protected by that clause.

The government also contends that two recent Supreme Court decisions control this case and determine that reversal after conviction does not bar retrial except where based on insufficiency of the evidence.[12] The first of these cases, *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d

**9.** *Jenkins* was overruled by the Court in *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65, *reh. denied,* 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 197 (1978), in which it was held that the government's appeal of a midtrial dismissal of an indictment invaded no interest protected by the double jeopardy clause. This effectively eliminates the distinction which *Lee* discusses.

**10.** *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Kessler,* 530 F.2d 1246 (5th Cir. 1976).

**11.** In *Wade* the Court stated "that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be

subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). The Court in no way indicated that this "valued right" was the only protection afforded by the double jeopardy clause.

**12.** It should be noted at least peripherally that appellant made an alternative contention on appeal that if double jeopardy did not bar retrial on the basis of reversal for prosecutorial misconduct, retrial should be barred because of reversal due to insufficiency of the evidence. This argument is patently without merit.

1 (1978), barred a defendant's retrial on precisely that basis. In dicta, the Court made the following statement:

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e. g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct.

*Id.* at 15, 98 S.Ct. at 2149.[13]

The second Supreme Court case relied on by the government is *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65, *reh. denied*, 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 197 (1978). The Court in *Scott* overruled *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975) and held that the government could appeal from the midtrial dismissal of an indictment against a defendant without invading interests protected by the double jeopardy clause. Also in dicta, the Court commented in *Scott* that "[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, *Burks v. United States* [437 U.S. 1], 98 S.Ct. 2141, 57 L.Ed.2d 1

(1978) poses no bar to further prosecution on the same charge." *Scott*, 437 U.S. at 90–91, 98 S.Ct. at 2193.[14] Neither of these cases concerned the question presented here but if the quoted language from these opinions is given even instructive value, this court cannot hold, consistent with *Kessler*, that double jeopardy bars retrial where prosecutorial overreaching was the basis for reversal. It is not necessary to rule on this question, however, for the resolution of the case at bar.

### Double Jeopardy Applied to these Facts

The reason for reversal on which this double jeopardy plea is based is the government's failure to obey a court order to disclose the whereabouts of an informant whose name was known to defendant but whose address was a mystery. In challenging the order the government contended that the informant, Mr. Posner, did not "wish" to speak to Opager's counsel. *United States v. Opager*, 589 F.2d 799, 804 n.10 (5th Cir. 1979). The court directed the government to disclose the address on three occasions, *id.* at 805, but the court apparently never sought to enforce its order through contempt proceedings and, in fact, sustained the government's objections to questions put by defense counsel to Posner at

---

**13.** It is not at all clear from this statement that the Court intended to include the situation where bad faith prosecutorial overreaching exists. While this court's research has revealed no case directly distinguishing "misconduct" from "bad faith prosecutorial overreaching", it seems clear that the latter phrase is the more demanding one and it is in such terms that the key cases in this area have been couched.

An examination of definitions of the terms reveals a notable difference in the terms. Misconduct, while it connotes some level of willfulness, does not require a bad motive necessarily. One may engage in misconduct believing it to be perfectly permissible. *See* Black's Law Dictionary 1150 (4th ed. 1951).

"Bad faith prosecutorial overreaching" allows no doubt, however, about the intent and purposefulness of the actor. At least one court has held that "bad faith" is synonymous with fraud. *See Joiner v. Joiner*, 87 S.W.2d 903, 915 (Tex.Civ.App.1935). Chief Judge Markey of the Court of Customs and Patent Appeals and author of *United States v. Kessler*, 530 F.2d

1246 (5th Cir. 1976) has described bad faith as "intentional, purposeful conduct motivated by a malicious or discriminatory purpose." *Munson v. Gilliam*, 543 F.2d 48, 53 (8th Cir. 1976), *quoting Maney v. Ratcliff*, 399 F.Supp. 760, 772 (E.D.Wis.1975).

In sum *Burks* may be read not to completely foreclose the application of the double jeopardy clause to cases in which reversal after conviction has been obtained where *Kessler* type bad faith overreaching exists. This reading, however, may not have survived *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65, *reh. denied*, 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 197 (1978) decided the same day as *Burks. See* discussion, *infra.*

**14.** The fact that Justice Rehnquist in *Scott* based his comment on *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), may indicate that it is not as all-inclusive as it may sound. *See* note 13 *supra.*

trial concerning his pre-trial whereabouts. *Id.*

Nowhere in Judge Brown's opinion, reversing Opager's conviction, is bad faith, overreaching or even misconduct mentioned.[15] The government's arguments for not complying with defense counsel's disclosure request, while lacking in merit, are not frivolous[16] and while the failure to obey the court's order is inexcusable, there is no evidence that it was done in bad faith or that it constitutes prosecutorial overreaching.

In a recent decision of this court Judge Gee ruled that three improprieties committed by the prosecutor at trial, which when aggregated justified mistrial, were "not egregious enough to warrant the serious sanction of prohibiting reprosecution."[17] *United States v. Garza*, 603 F.2d 578, 580 (5th Cir. 1979). A recent Tenth Circuit case, closer to the facts of this case, also allowed retrial. In *United States v. Leonard*, 593 F.2d 951 (10th Cir. 1979), a mistrial was granted for failure of the United States Attorney to give over Jencks Act[18] material. The appellate court found that there was no finding of bad faith and that there was no indication of provocation of the mistrial motion. *Id.* at 954.[19]

Even if the *Kessler* rule could apply to the case now before the court, and there is substantial doubt about that, no bad faith prosecutorial overreaching exists in this record sufficient to bar retrial of the defendant. Accordingly, on the particular facts presented by this case, the judgment of the district court is AFFIRMED.

**15.** Judge Brown did write that the "government's refusal to obey the District Court's disclosure order . . . affronted the Court . . . ." *United States v. Opager*, 589 F.2d 799, 805 (5th Cir. 1979).

**16.** *See* note 5 *supra.*

**17.** The three incidents were: (1) the prosecutor commented, in response to a defense objection, in a manner that the trial court interpreted to be an "improper reference" to his prior *James* [*United States v. James*, 590 F.2d 575 (5th Cir. 1979)] ruling that a conspiracy had been established; (2) the prosecutor laughed out loud when the defense counsel was cross-examining a witness; and (3) the

prosecutor, with knowledge that Ramsey Muniz would assert a fifth amendment privilege not to testify, called him as a witness in the presence of the jury.
*United States v. Garza*, 603 F.2d 578, 579 (5th Cir. 1979).

**18.** 18 U.S.C. § 3500.

**19.** *See also United States v. Gaultney*, 606 F.2d 540, 547 (5th Cir. 1979); *United States v. King*, 590 F.2d 253, 256 (8th Cir. 1978), *cert. denied*, 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979).