**GOVERNMENT OF THE VIRGIN ISLANDS, Appellant**

**v.**

**JAREEM FAHIE, Appellee**

D.C. Crim. App. No. 2001-324

District Court for the Virgin Islands

Division of St. Thomas and St. John

February 11, 2004

476

RICHARD S. DAVIS, ESQ., Assistant Attorney General, Department of Justice, St. Thomas, U.S.V.I., *for Appellant*

CHARLES S. RUSSELL, JR., ESQ., St. Thomas, U.S.V.I., *for Appellee*

FINCH, MOORE, and CABRET, *Judges*

## MEMORANDUM OPINION

*Per curiam.*

### I. SUMMARY

The appellee moves to dismiss this appeal as barred by double jeopardy. For the reasons explained below, we will deny the appellee's motion to dismiss.

The government alleges that the territorial court erred as a matter of law in (1) finding that the government's failure to disclose a firearms trace summary violated *Brady*; (2) determining that the failure to disclose the summary did not fall under Federal Rule of Criminal Procedure 16(a)(2); and (3) dismissing the charge against defendant based on a perceived *Brady* violation and violation of Federal Rule of Criminal Procedure 16(a)(1)(C). We hereby reverse the trial court's decision.

### II. STATEMENT OF THE CASE

On July 8, 2001, appellee Jareem Fahie was shot and sustained bullet wounds. He drove to Schneider Hospital where he was interviewed by Virgin Islands police officer Joycelyn Lee-Bob. Fahie told her that he was in his car in the vicinity of the Ritz-Carlton after he dropped off two friends. He was approached by another car, a passenger got out, approached Fahie's car, and shot Fahie. Officer Lee-Bob asked Fahie if the Toyota parked outside the hospital was Fahie's car, and Fahie replied that it was.

The officer then went out to the car to search for evidence of the shooting. She observed a sawed-off shotgun in the back seat of the car. She went back to the emergency room to ask Fahie if he had a license for the weapon. He replied that he did not, and the officer arrested Fahie. On July 17, the government filed an information charging Fahie with violating sections 2253(b) and 2256(a) of Title 14 of the Virgin Islands Code. On October 2, 2001, the government filed a first amended

477

information charging Fahie with possession of an unlicensed firearm in violation of 14 V.I.C. 2253(a).

Fahie entered a plea of not guilty, and on October 24, 2001, the case went to trial in the Territorial Court. The prosecution's second witness was Detective David Monoson, who reported on the results of the test firing of the weapon. On cross-examination, Monoson for the first time disclosed to the defense that he had run a trace through the Bureau of Alcohol, Tobacco, and Firearms, ["ATF"] and had received a report with the name of the gun's registered owner.

As defense counsel had not previously seen or heard of any trace report, he immediately objected and argued that the report was favorable and exculpatory evidence that was material to the question of the defendant's guilt. Counsel asserted that the prosecution's failure to disclose it before trial violated *Brady. See Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). The government argued that this information did not fall under *Brady* and, even if it did, it was exempt from discovery under Rule 16(a)(2) of the Federal Rules of Criminal Procedure.

The court held that the information was potentially exculpatory *Brady* material, the nondisclosure of which prejudiced Fahie's due process rights and amounted to a *Brady* violation. The judge also ruled that the failure to disclose the information was in violation of Rule 16(a)(1)(F).[1] The court found that under the circumstances, no alternative relief under Rule 16(d)(2) was appropriate other than dismissal. Based upon both the *Brady* violation and the discovery violation, the judge granted Fahie's motion to dismiss and the government timely filed this appeal.

The federal rules of procedure apply to proceedings in the Territorial Court to the extent they are not inconsistent with the Rules of the Territorial Court. TERR. CT. R. 7. *Government of the Virgin Islands v. Briggs*, 155 F. Supp. 2d 455, 456 (D.V.I. App. Div. 2001).

---

[1] The trial court's order states that the failure to disclose was a violation of Federal Rule of Criminal Procedure 16(a)(1)(C). *Subsection (C)* pertains to discovery requests by an organizational defendant. We assume that this was a typographical error and that the trial court meant that the failure to disclose was a violation of *subsection (F)*, "Reports of Examinations and Tests."

## III. DISCUSSION

### A. Jurisdiction and Standard of Review

█ This Court has jurisdiction to review an order dismissing an information or otherwise terminating a prosecution in favor of a defendant or defendants on one or more counts, except where there is an acquittal on the merits. *See* 4 V.I.C. § 39(c); Section 23A of the Revised Organic Act of 1954.[2]

The standard of review is plenary, as the issue involves a question of law. The ultimate determination of materiality of evidence is a question of law subject to plenary review. *United States v. Bagnall*, 907 F.2d 432, 435 (3d Cir. 1990).

### B. Fahie's Motion to Dismiss this Appeal

The appellee moves to dismiss the appeal, arguing that the government is barred from appealing a dismissal after jeopardy has attached. He relies on the double jeopardy clause of the Fifth Amendment, which applies to the Virgin Islands through section 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561.

The first relevant question in a double jeopardy analysis is whether the defendant was placed in jeopardy. *United States v. Pharis*, 298 F.3d 228, 241 (3d Cir. 2002). In this case, as in *Pharis*, the jury had been sworn and the trial had begun. Fahie was, therefore, placed in jeopardy. But as the Court of Appeals has observed, "although the Supreme Court has explicitly held that 'the federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy,' this proposition ... is the beginning rather than the end of our analysis." *United States v. Maker*, 751 F.2d 614, 620 n.22 (3d Cir. 1984), *quoting Crist v. Bretz*, 437 U.S. 28, 38, 57 L. Ed. 2d 24, 98 S. Ct. 2156 (1978).

The Supreme Court has outlined the "limited circumstances" when a second trial on the same offense is constitutionally permissible:

---

[2] *See* Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a(a). The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2001), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2001) (preceding V.I. CODE ANN. tit. 1).

A new trial is permitted, *e.g.*, where the defendant successfully appeals his conviction, *United States v. Ball*, 163 U.S. 662, 672, 41 L. Ed. 300, 16 S. Ct. 1192 (1896); where a mistrial is declared for a "manifest necessity," *Wade v. Hunter*, 336 U.S. 684, 93 L. Ed. 974, 69 S. Ct. 834 (1949); where the defendant requests a mistrial in the absence of prosecutorial or judicial overreaching, *United States v. Dinitz*, 424 U.S. 600, 47 L. Ed. 2d 267, 96 S. Ct. 1075 (1976); *or where an indictment is dismissed at the defendant's request in circumstances functionally equivalent to a mistrial. Lee v. United States*, 432 U.S. 23, 53 L. Ed. 2d 80, 97 S. Ct. 2141 (1977). *See also Jeffers v. United States*, 432 U.S. 137, 53 L. Ed. 2d 168, 97 S. Ct. 2207 (1977).

*Sanabria v. United States*, 437 U.S. 54, 63 n.15, 57 L. Ed. 2d 43, 98 S. Ct. 2170 (1978) (emphasis added).

█ The *Pharis* court explains that *Sanabria* situations listed above "can be characterized as situations in which the defendant consented to or requested the termination." 298 F.3d at 242.

The Supreme Court held that when a defendant requests a mistrial, even in response to prosecutorial or judicial error, double jeopardy does not bar retrial, *Dinitz*, 424 U.S. at 606-612, unless the error that prompted it was "'bad-faith conduct by judge or prosecutor.'" 424 U.S. 600 at 611 (*quoting United States v. Jorn*, 400 U.S. 470, 485, 27 L. Ed. 2d 543, 91 S. Ct. 547 (1971) (plurality opinion)).

*Id.* at 243.

The analysis is the same when the defendant requests a dismissal. *See Lee v. United States*, 432 U.S. 23, 53 L. Ed. 2d 80, 97 S. Ct. 2141 (1977) (holding that the Double Jeopardy Clause did not bar a second prosecution because a first prosecution was terminated at the defendant's request); *see also United States v. Scott*, 437 U.S. 82, 98-99, 57 L. Ed. 2d 65, 98 S. Ct. 2187 (1978) (holding that "defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence ... suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant").

█ The record is clear that Fahie moved for a dismissal several times. Therefore double jeopardy does not preclude a new trial on this charge

and we deny the appellee's motion to dismiss the appeal on this ground. We now move on to the substance of the government's appeal.

## C. The *Brady* Violation

 The Supreme Court in *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). The government argues that the firearms trace summary is neither favorable to the defendant nor material to his guilt.

In *Brady v. Maryland,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Court subsequently held that the prosecution's duty to disclose favorable evidence is not dependent upon a request from the accused. Evidence is favorable to the accused under *Brady* "if it would tend to exculpate him or reduce the penalty ... ." The duty of disclosure is not limited to evidence the prosecutor is aware of. Rather, it includes "evidence known only to police investigators and not to the prosecutor." Thus, under *Brady,* "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."

> Even though this duty of disclosure is tightly tethered to constitutional guarantees of due process, "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." Rather, the prosecution's failure to disclose evidence rises to the level of a due process violation "only if the government's evidentiary suppression undermines confidence in the outcome of the trial." Thus, "the question is not whether the defendant would more likely than not have received a different verdict with the [concealed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

*Smith v. Holtz,* 210 F.3d 186, 195-197 (3d Cir. 2000) (citations omitted).

■ The Supreme Court has clarified the distinction between *Brady* material and a *Brady* violation. The Court wrote:

> The term "Brady violation" is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence— that is, to any suppression of so-called "Brady material"—although, strictly speaking, there is never a real "Brady violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 281-282, 144 L. Ed. 2d 286, 119 S. Ct. 1936 (1999).

■ It is clear in this case that the gun trace report was *Brady* material. It tended to exculpate Fahie and was favorable to his theory of the case in that evidence that the gun belonged to someone else is certainly consistent with Fahie's claim that it was not his. The government's suppression of this information amounted to a *Brady* violation. The Court of Appeals cautions us not to:

> confuse[] '*Brady* material' with the *Brady* materiality standard required to establish a due process violation. Evidence "is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. at 678.

*Smith v. Holtz*, 210 F.3d at 195-197.

The Supreme Court explained the materiality standard as follows:

> [A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant) ... [The]

482

touchstone of materiality is a reasonable probability of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A reasonable probability of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial.

*Kyles v. Whitley*, 514 U.S. 419, 434, 131 L. Ed. 2d 490, 115 S. Ct. 1555 (1995) (internal citations and quotation marks omitted).

This materiality standard is met here. A recent Court of Appeals decision from the Second Circuit explains how the nondisclosure of *Brady* material until nine days before trial (far in advance of the situation in this case) prejudiced the right to a fair trial and gave rise to a *Brady* violation:

The limited Brady material disclosed to [the defendant] could have led to specific exculpatory information only if the defense undertook further investigation. When such a disclosure is first made on the eve of trial, or when trial is under way, the opportunity to use it may be impaired. The defense may be unable to divert resources from other initiatives and obligations that are or may seem more pressing. And the defense may be unable to assimilate the information into its case. *See United States v. Cobb*, 271 F. Supp. 159, 163 (S.D.N.Y. 1967) (Mansfield, J.) ("There may be instances where disclosure of exculpatory evidence for the first time during trial would be too late to enable the defendant to use it effectively in his own defense, particularly if it were to open the door to witnesses or documents requiring time to be marshalled and presented.").

Moreover, new witnesses or developments tend to throw existing strategies and preparation into disarray.

*Leka v. Portuondo*, 257 F.3d 89, 101 (2d Cir. 2001). Clearly here, Fahie had no meaningful opportunity to utilize the evidence that someone else owned the weapon to his advantage.

In determining that the withheld evidence was both favorable and material, the trial court correctly considered it in conjunction with facts

and testimony elicited in both the trial and a lengthy suppression hearing. *See United States v. Pelullo,* 105 F.3d 117, 123 (3d Cir. 1997) (materiality of suppressed evidence is to be considered collectively with the other evidence in the case, not item by item). In Fahie's case, the relevant context includes the following:

A. The weapon was located in the back seat of the car Fahie was driving in a black nylon bag. (App. 78-79.)

B. The government did not allege that Fahie actually—as opposed to constructively—possessed the weapon. (App. 78.)

C. The government did not conduct a routine gunshot residue test to determine whether Fahie had discharged a weapon that evening. (App. 38.)

D. Fahie did not own the car. (App. 68.)

E. Fahie adamantly denied that the gun was his. (App. 28.)

F. The government was aware that other persons had been in the car that night, but did not investigate or interview them. (App. 29, 68-69.)

G. The weapon had not been reported stolen. (App. 46, 65.)

H. There was no admissible fingerprint evidence. (App. 23-26.)

The government's case against Fahie was a purely circumstantial one of constructive possession. The government had to prove beyond a reasonable doubt that Fahie had both the power and intention to exercise dominion and control over the weapon. If the government had complied with its *Brady* obligation to turn over the trace report before trial, the defendant would have had an opportunity to investigate and possibly develop evidence to bolster his defense that Fahie did not know that there was a weapon in the car.

The fact that the gun was registered to someone other than Fahie was evidence critical to Fahie's defense. That this person had never reported the gun stolen was also in Fahie's favor. If Fahie, through investigation, could have linked the true gun owner to one of the passengers in his vehicle on the night in question, this would have tended to establish that the passenger actually possessed the weapon and would go far in negating the government's contention that Fahie was the constructive

possessor of that weapon. Based on the foregoing, we find that Fahie has established a *Brady* violation.

We next consider whether the dismissal of the indictment was a proper remedy for a *Brady* violation. The Court of Appeals for the Third Circuit has not directly addressed this question as far as we have been able to determine. The Court of Appeals for the Fourth Circuit has, however and held that "the proper remedy for a *Brady* violation is another trial, not a dismissal of the charges." *United States v. Mitchell*, 1998 U.S. App. LEXIS 24677 (4th Cir. 1998), *citing California v. Trombetta*, 467 U.S. 479, 486-87, 81 L. Ed. 2d 413, 104 S. Ct. 2528 (1984) ("In nondisclosure cases, a court can grant the defendant a new trial at which the previously suppressed evidence may be introduced.").

The Court of Appeals for the Ninth Circuit similarly has held that

> our precedents make clear that dismissal of an indictment is an appropriate sanction for a constitutional violation only where less drastic alternatives are not available. *Barrera-Moreno*, 951 F.2d at 1093. That standard is not met here. A copy of the agreement was located prior to the end of trial. The district court could have granted a continuance and allowed additional cross-examination of Rosemary based upon the impeachment material in the written agreement. It also could have granted a motion for a new trial. Therefore, the district court's dismissal of the indictment cannot be upheld on *Brady* grounds.

*United States v. Kearns*, 5 F.3d 1251, 1254 (9th Cir. 1993). The same Court of Appeals reached a similar conclusion in a subsequent case:

> The government appealed the dismissal with prejudice on the grounds that the withholding of Brady material did not constitute a due process violation and that the dismissal was not a proper exercise of the court's supervisory power. In an unpublished memorandum disposition, we reversed the district court's order. We held that because the Brady violation could have been easily remedied by the granting of a continuance or the ordering of a mistrial, the sanction of dismissal with prejudice was not warranted.

*United States v. Gaytan*, 115 F.3d 737, 741 (9th Cir. 1997).

The Supreme Court has addressed the issue of proper remedies for constitutional violations in the Sixth Amendment context, noting that

485

"the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364, 66 L. Ed. 2d 564, 101 S. Ct. 665 (1981).

▪ Here, the Territorial Court easily could have granted a mistrial or a short continuance, or pursued avenues other than dismissal. The trial judge apparently believed she was limited to dismissing the case. The government at trial proposed a continuance, but the court rejected it and did not explore any alternatives. (App. 71-72.) The trial judge merely stated:

> I will be evidently looking at a dismissal if I find that it was discovery that he's entitled to and could have led to a defense or some Brady material.

(App. 50.) She held:

> I find that it's too late at this juncture to continue a case so that [Fahie] could have the opportunity to make an independent investigation to see whether he can further buttress a defense. And I do believe that it is Brady material and it impacts on the due process rights of the defendant, and the Court is going to reluctantly grant the motion to dismiss.

(App. 79-80.)

We find that the trial judge abused her discretion in dismissing the case with prejudice.

### D. The Discovery Violation

The trial court held that the firearms trace summary was discoverable under Rule 16(a)(1)(F). The government argues to the contrary that the information was exempt from discovery pursuant to Rule 16(a)(2) which specifically exempts from disclosure "reports, memoranda, or other internal documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."

This controversy is moot. Even if the material was exempt under Rule 16(a)(2), the government was still under a *Brady* obligation to disclose it. And if the trial court was correct in its determination that the material was discoverable under Rule 16, it nevertheless erred in dismissing the

case with prejudice, for the reasons explained above. Rule 16(d)(2)(D) does authorize a court to "enter any order that is just under the circumstances" if a party fails to comply with the discovery rule. Dismissal with prejudice, however, was not just under these circumstances. Such a finding constitutes an abuse of discretion. A just remedy for a discovery violation under the circumstances of this case would have been a mistrial or a continuance for the defendant to investigate and update his strategy, as is provided for by Rule 16(d)(2)(B).

## V. CONCLUSION

The appellee's motion to dismiss is denied because the appellee himself moved to dismiss the case, thus double jeopardy does not bar the government's appeal.

The Territorial Court correctly identified a *Brady* violation, but erred in dismissing the case.

This Court need not determine whether the evidence in question would fall under Rule 16(a)(2), "Information not subject to disclosure." Even if it would not and was thus subject to discovery, the dismissal was nevertheless inappropriate.

The order of dismissal is hereby vacated and the case remanded to the Territorial Court for further proceedings consistent with this opinion.